UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JESSICA J. JELINEK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO: 3:09-CV-368 CAN |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On August 13, 2009, Plaintiff, Jessica J. Jelinek ("Jelinek"), filed a complaint in this Court seeking judicial review pursuant to 42 U.S.C. § 405(g). On February 4, 2010, Jelinek filed her opening brief. On May 19, 2010, Defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), filed a response brief. On June 01, 2010, Jelinek filed her reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

I.  **PROCEDURE**

On August 5, 2005, an application for children's supplemental security income ("SSI") benefits was filed on Jelinek's behalf. On October 21, 2005, Jelinek's application was denied initially and was again denied ,upon reconsideration, on March 2, 2006. On February 27, 2008, Jelinek appeared, with counsel, and testified before an Administrative Law Judge ("ALJ"). Leonard Fisher testified as a vocational expert ("VE") at the hearing. On June 2, 2008, the ALJ issued a decision, finding Jelinek not disabled both prior to and after Jelinek turned 18. As a

1

result, the ALJ concluded that Jelinek did not qualify for benefits. On June 12, 2009, the Appeals Council denied Jelinek's request for review, leaving the ALJ's decision as the final decision of the Commissioner. 20 C.F.R. § 404.981/416.1481. On August 13, 2009, Jelinek filed and appeal of the Commissioner's decision in this Court. This Court may enter a ruling in this matter pursuant to 42 U.S.C. § 405(g).

**II.    ANALYSIS**

   A.    Facts

Jelinek applied for children's SSI benefits on August 5, 2005. Jelinek turned 18 on December 17, 2006 and was 20 years old at the time of the ALJ hearing and decision. At the time of the ALJ decision, Jelinek had obtained a GED and was enrolled in college. Jelinek had no past relevant work.

   1.    Medical Evidence

   a.    Jelinek's physical impairments

In July of 2005, Jelinek was in a serious car accident. Jelinek sustained a pelvic fracture, neck fracture, and a C7 burst fracture. In August of 2005, Jelinek was treated at the Valparaiso Orthopedic Clinic for her fractures. For some time thereafter, Jelinek was in a wheelchair and wore a cervical collar. A September 19, 2005 CT scan showed a 50% reduction in the height of the vertebral body since July 2005.

On February 6, 2006, Jelinek began treatment with Dr. Aashish Deshpande at Physical Medicine & Rehabilitation Specialists, P.C.. Jelinek reported significant pain and listed that she was taking Vicodin, Flexeril, and Neurontin to manage the same. On March 20, 2006, Jelinek saw Dr. Deshpande again, and he prescribed a device for Jelinek to use at school that elevates

her books so Jelinek could avoid flexing her neck downward. Dr. Deshpande also noted that sitting in a hard chair for long hours would be difficult for Jelinek. On September 6 and November 6, 2007, Jelinek saw Dr. Deshpande and an examination revealed muscle spasms in the paraspinal region and in the thoracic and lumbar area. As a result, Jelinek's range of motion was limited by about 50-60%.

        b.      <u>Jelinek's mental impairments</u>

In 2002, when Jelinek was 15 years-old, Psychologist, Dr. Ruhrold, diagnosed Jelinek with bipolar disorder with borderline personality features. On December 20, 2002, Jelinek was examined by Psychiatrist Linda Hill. Dr. Hill noted that Jelinek's symptoms included past suicidal ideations, racing thoughts, irritability, panic attacks, and trouble concentrating. Dr. Hill noted that Jelinek was able to function within the average range of intellectual functioning but her concentration was impaired. Jelinek was diagnosed with major depressive disorder, post-traumatic stress disorder, generalized anxiety disorder and alcohol abuse. Dr. Hill assessed an Axis V Global Assessment of Functioning ("GAF") score of 55[1]. During 2002-2003, Jelinek was treated at the Center for Family Health care for her impairments and was prescribed the medication Adderall, Trazodone, and Geodon.

On October 5, 2005, Dr. John Heroldt conducted a clinical interview and examination of Jelinek at the request of DDS. Dr. Heroldt noted that Jelinek's memory was below average and that she had mild difficulties with arithmetic calculations. Dr. Heroldt diagnosed Jelinek with major depressive disorder, recurrent, severe, with psychotic features and borderline personality

---

[1] GAF scores represent on a single day and individual's overall level of functioning, including symptom severity. The higher the GAF score, the less severe the symptoms and the individual will have a higher level of functioning.

disorder. Dr. Heroldt reported a GAF score of 50.

On April 23, 2007, Jelinek was evaluated by Dr. Snieguole Radzeviciene of the Bowen Center. Jelinek's medications at the time of the evaluation were Trazodone, Adderall, Ativan, and a Fentanyl Patch. Jelinek's Axis I diagnoses were major depressive disorder, alcohol abuse in remission, ADHD, a history of anxiety disorder, a history of posttraumatic stress disorder and obesity. Dr. Radzeviciene gave Jelinek a GAF score of 65.

On January 29, 2008, Dr. Radzeviciene completed a Mental Impairment Questionnaire. Jelinek's Axis I diagnosis was bipolar disorder and ADHD. Jelinek's Axis III listed obesity and spinal injury. Jelinek's Axis IV listed school stress and relationship problems; and Jelinek's Axis V listed her current GAF score at 55-60. In the form, Dr. Radzeviciene opined that Jelinek's impairments could keep her from work more than three times a month. Dr. Radzeviciene further opined that Jelinek's daily activities were not limited; that social functioning was slightly limited; that Jelinek had difficulties with concentration, persistence or pace; and that Jelinek had repeated episodes of deterioration or decompensation in work or work-like settings.

    2.    <u>Jelinek's testimony before the ALJ</u>

At the February 2008 hearing, Jelinek testified that she lives in her own apartment. Jelinek also attested that she dropped out of school in the tenth grade due to depression and anxiety. Jelinek stated that, since dropping out of high school, her anxiety and bipolar symptoms have gotten worse. Jelinek testified that she obtained her GED in 2006 and enrolled at Ensola College the same year. At the time of the hearing, Jelinek was enrolled in four classes and was working at a college library checking books in and out at the front desk. The job was part of a work-study program and Jelinek worked twice a week, for four hours each time. Although

Jelinek was enrolled in four classes at the time of the hearing, Jelinek testified that she dropped three classes the prior semester due stress. Jelinek also informed the ALJ that she had to use a desk raiser and a special chair and had to stand up during class to accommodate her pain. In addition, Jelinek testified that she had previously worked at the front desk of the Red Rock Inn Motel for three months answering the phone and checking guests in and out. Jelinek had worked four days a week for four to six hours but struggled physically and mentally with the stress of the job.

Jelinek stated that she has pain in her tailbone, pelvis, legs, upper neck and shoulders. Jelinek testified that her medications include Fentanyl, Percocet, Adderall as well another medication for her mental disability. Jelinek also testified that she has anxiety and that her medications cause fatigue. Jelinek told the ALJ that she had been a psychiatric inpatient twice, once when she was 16 and again when she was 20. Jelinek testified that she used to hear voices and hallucinate but noted that the voices and hallucinations have mostly stopped.

   3. <u>Testimony of the Vocational Expert</u>

A vocational expert testified at the hearing that Jelinek's past relevant work includes only part-time jobs. The ALJ asked the vocational expert to consider a hypothetical individual who was the same age as Jelinek, had the same education and work background and was limited to performing light, unskilled work. The vocational expert testified that the hypothetical person could perform the following light unskilled jobs: cashier II, production assembler, small product assembler, fast food worker, cleaning worker and an office helper.

The second hypothetical question asked the vocational expert to consider an individual with Jelinek's age, education and work background but who was limited to sedentary, unskilled

5

work. The vocational expert testified that the hypothetical person could perform the following sedentary and unskilled jobs: surveillance monitor, call-out operator, document preparer, and charge account clerk.

    4.    <u>The ALJ's decision</u>

On June 2, 2008, the ALJ issued a decision regarding both child and adult disability and found Jelinek to not be disabled under either category. As to both, the ALJ found that Jelinek had not engaged in substantial gainful activity since she applied for SSI. Similarly, as to both claims, the ALJ found that Jelinek had the severe impairments of ADHD; bipolar disorder; personality disorder; post-traumatic stress disorder; and history of pelvic, cervical, and thoracic fractures.

As to Jelinek's child disability claim, the ALJ found that Jelinek did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the listings, and, thus, was not disabled prior to age 18. 20 C.F.R. § 404, subpt. P, app. 1. With regard to the six domains of function, the ALJ found that Jelinek had no limitations in acquiring and using information, attending and completing tasks or in her ability to care for herself. The ALJ additionally found that Jelinek had less than marked limitations in her ability to interact and relate to others, in her ability to move about and manipulate objects and in her health and physical well-being. Consequently, the ALJ concluded that Jelinek was not disabled as to her child disability claim.

As to Jelinek's adult disability claim, the ALJ found that, since attaining age 18, Jelinek continued to have the same severe impairments but that her impairments did not meed or equal a listed impairment. 20 C.F.R § 404 subpt. P, app. 1. Next, the ALJ found that Jelinek had a

6

residual functional capacity ("RFC") for unskilled light and sedentary work. The ALJ then found that Jelinek could not perform her past work because Jelinek had no past relevant work experience. Finally, the ALJ found that, based upon the testimony of the vocational expert, jobs exist in the national economy that Jelinek could still perform and that, therefore, Jelinek was not disabled as to the adult claim as well.

  B. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C § 405(g). See also Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed *de novo*. Haynes, 416 F.3d at 626.

  C. Jelinek's motion for summary judgment or remand

    1. Children's Social Security benefits analysis

To be entitled for children's benefits under the Social Security Act, an individual, under age eighteen, will be considered disabled if she has:

> a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

7

12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). A child's disability claim is analyzed under a three-step sequential evaluation process to determine whether a child claimant is disabled. 20 C.F.R. § 416.924; <u>Murphy v. Astrue</u>, 496 F.3d 630, 633 (7th Cir. 2007); <u>Tally v. Barnhart</u>, 2007 WL 1238913, at *7 (N.D. Ill. 2007). First, if the child is engaged in substantial gainful activity, she is not disabled. 20 C.F.R. § 416.924(b). Second, if the child's impairments are not severe, i.e., causes no more than minimal functional limitations, she is not disabled. 20 C.F.R. § 416.924(c) Third, if the child's impairments meet, medically equal, or functionally equal the listings (20 C.F.R pt. 404, subpt. P, app. 1), then she is disabled. 20 C.F.R. § 416.924(d). If the claimant is found to suffer from one or more severe impairments that meet or are medically equivalent to a listing, the ALJ must enter a finding of disability. 20 C.F.R. §§ 416.924(d)(1), 404.1520(d); <u>Pena ex rel. Pena v. Barnhart</u>, 2002 WL 31527202, at *6-7 (N.D. Ill. 2002). If not, the ALJ must then consider functional equivalence. 20 C.F.R. §§ 416.924(d); 416.926a.

As to child benefits, Jelinek asserts that the ALJ erred in finding she did not meet or functionally equal the listing requirements of 12.04: Affective Disorders, prior to turning eighteen. As to medical equivalency, this Court concludes that the ALJ supported his conclusions with adequate record evidence and sufficient articulation of his analysis.

The regulations require the ALJ to find that a claimant's impairments meet or is medically equal to a listed impairment, "if the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 416.926; 20 C.F.R. § 416.920. Listing 12.04: Affective Disorders requires that a claimant demonstrate, not only that she meets the diagnostic criteria set forth in listing §12.04A, but also that she satisfies the severity criteria §12.04B.

8

Section B requires that the claimant's mental impairment result in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04B.  A marked limitation means more than moderate but less than extreme. 20 C.F.R. § 416.926a(e)(2-3).  In making this determination, the ALJ must consider any medical opinions from acceptable medical sources which reflect judgments about the nature and severity of the impairments and resulting limitations.  20 C.F.R. § 416.927, SSR 96-2p, and SSR 96-6p.

Jelinek contends that the ALJ erred in finding that she did not medically equal the listing. In determining wether Jelinek medically equaled the listing, the ALJ made reference to the opinions of Dr. Heroldt, Dr. Neville, Dr. Roush, and Dr. Kladder.  Specifically, the ALJ discussed Dr. Heroldt's observation that Jelinek appeared appropriately groomed, relevant speech and no overt signs of psychosis. In addition the ALJ considered the opinions of Dr. Neville and Dr. Kladder that Jelinek did not have a listing-level impairment.  The ALJ then note that although Jelinek did have a history of bipolar disorder with mood instability, as well as anger and suicidal ideations, the evidence showed that it was not continuously of listing level severity.  Specifically, the ALJ noted that the severity of Jelinek's symptoms fluctuated and were controlled with medication.  As a result, the ALJ found that Jelinek did not meet or medically equal the listing.  This Court considers the ALJ's analysis in this regard to be sufficient and supported by the record evidence.

Similarly, this Court concludes that the ALJ's consideration of functional equivalency is also substantially supported.  To determine functional equivalence, the ALJ must evaluate the

9

severity of the impairment in six domains: 1) acquiring and using information, 2) attending and completing tasks, 3) interacting and relating with others, 4) moving about and manipulating objects, 5) caring for oneself, and 6) health and physical well-being.  Murphy, 496 F.3d at 633. A marked limitation is found when an impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(I); see also Tally, 2007 WL 1238913, at *8 (defining a marked limitation as "more than moderate but less that extreme").  An extreme limitation is found when an impairment "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).  If the ALJ finds a marked difficulty in two domains of functioning or an extreme limitation in one, functional equivalence will be found to exist.  Tally, 2007 WL 1238913, at *8.

As required, the ALJ properly applied a functional domain analysis to determine functional equivalency.  This Court concludes that the ALJ's analysis regarding functional equivalency is both thorough and substantially supported..  In particular, this Court notes the ALJ's six domains of function analysis comprises seven pages of the ALJ's opinion.  The ALJ's discussion of the evidence was sufficient to create a logical bridge and satisfies the minimum articulation required.  In addition, the ALJ supported each of his conclusions with multiple pieces of evidence from the record.  Accordingly, this Court concludes that substantial evidence supports the ALJ's determination that prior to turning eighteen, Jelinek also did not functionally equal the requirements of listing 12.04.

        2.     <u>Adult Social Security benefits analysis</u>

To be entitled to adult Social Security benefits under 42 U.S.C. §§ 423, 1321(a), Jelinek

must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's RFC leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352. If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpt. P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the

Commissioner at step five.  Id.

Jelinek asserts four arguments regarding the ALJ's adult disability analysis.  First, Jelinek asserts that the ALJ erroneously found the she did not meet listing 12.04 since turning eighteen.  Second, Jelinek argues that the ALJ failed to properly weigh the medical evidence in the record.  Third, Jelinek contends that ALJ made an erroneous credibility finding.  Fourth, Jelinek asserts that the ALJ made an improper step four finding, relying on a incomplete hypothetical question to the vocational expert.

>    a.   The ALJ's determination that Jelinek does not meet or medically equal a listed impairment after attaining age eighteen is supported by substantial evidence.

Jelinek asserts that the ALJ erred when he determined Jelinek did not meet listing 12.04: Affective Disorders, after attaining age eighteen. Relying on his previous analysis of Jelinek's impairments prior to attaining age eighteen, the ALJ concluded that there was no new medical evidence to change his conclusion. Thus, the ALJ concluded that Jelinek did not have an impairment or combination of impairments that met or medically equaled a listed impairment since attaining age eighteen.  In reaching this conclusion, the ALJ considered the opinions of Dr. Radzeviciene and Ms. Fredericks that Jelinek had seriously limited ability to maintain attention for two-hour periods, sustain an ordinary routine, complete a normal workday, work in coordination with others; understand, remember and carry out detailed instructions and maintain regular attendance.  However, the ALJ discounted the opinions of Dr. Radzeviciene and Ms. Fredericks because they were inconsistent with other evidence in the record.  Specifically, the ALJ discussed the fact that Jelinek had attained a GED, attended college and worked part-time. Thus, the ALJ concluded that Jelinek did not have an impairment that met the listing requirement

since attaining age eighteen. Accordingly, this Court concludes that substantial evidence in the record supports the ALJ's determination that after turning eighteen, Jelinek did not meet or medically equal the listed impairment.

           b.        <u>The ALJ properly weighed the medical evidence of the record</u>.

Jelinek contends that the ALJ failed to properly weigh the evidence of the record by solely relying on the files of non-examining State Agency physicians files in determining Jelinek's mental functioning. In particular, Jelinek argues that the ALJ failed to give controlling weight to Dr. Radzeviciene's opinion that Jelinek was limited to no functional ability in several areas of mental activity.

An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and if it is consistent with other substantial evidence in the record. <u>Hofslien v. Barnhart</u>, 439 F.3d 375, 376 (7th Cir. 2006); <u>Clifford v. Apfel</u>, 227 F.3d 863, 870 (7th Cir. 2000); 20 C.F.R. § 416.927(d)(2); S.S.R. 96-2p. More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 416.927(d)(2); <u>Clifford</u>, 227 F.3d at 870. Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. <u>Clifford</u>, 227 F.3d at 870. When evidence in opposition to the presumption is introduced - when "well supported contradicting evidence" is submitted - the rule drops out and the treating physician's evidence becomes just one more piece of evidence that the ALJ must consider. <u>Hofslien</u>, 439 F.3d at 376-377. While the ALJ is not required to award a treating physician controlling weight, the ALJ must, at a minimum, sufficiently articulate his reasoning for not doing so. <u>Id</u>.

To begin, this Court notes that the ALJ discussed Dr. Radzeviciene's opinion at multiple points throughout his analysis. <u>See</u> <u>e.g</u>. Tr. 25, 27, 33-34. Having considered the opinion, however, the ALJ decided to discount Dr. Radzeviciene's opinion because it was inconsistent with the other evidence in the record.. In particular, the ALJ noted that, in January 2008, Dr. Radzeviciene was of the opinion that Jelinek had seriously limited to no ability to function in sever areas of mental activity. <u>See</u> Tr. at 44. However, the ALJ noted that the record evidence showed that Jelinek functioned well and had attained a GED, attended college, obtained good grades and also worked part-time. The ALJ also noted Jelinek's ability to complete her school-work, maintain friendships, and develop an employment history. As such, the ALJ concluded that Dr. Radzeviciene's opinions should be afforded less than controlling weight. This reasoning is consistent with that of <u>Hofslien</u>, 439 F.3d 375.

In addition, this Court concludes that the ALJ's rationale for not affording Dr. Radzeviciene's opinion controlling weight is supported by substantial evidence and his reasoning is consistent with the evidence in the record. Thus, this Court finds that the ALJ properly weighed the medical evidence of the record.

      c.      <u>Substantial evidence supports the ALJ's credibility finding</u>.

Jelinek additionally argues that the ALJ made an erroneous credibility finding to both child and adult benefits. In particular, Jelinek contends that the ALJ's credibility finding was vague.

Since an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference; and, as a result, his credibility determinations will only be overturned if they are patently wrong. <u>Jens v. Barnhart</u>, 347 F.3d

209, 213 (7th Cir. 2003); Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). See also Porchska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (holding "[o]nly if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported...can the finding be reversed."). However, as a bottom line, Social Security Ruling 96-7p requires an ALJ to consider the entire case record and articulate specific reason to support his credibility finding. Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003); Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegation are not credible. Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2001); S.S.R. 96-7p. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski, 245 F.3d at 887; S.S.R. 96-7p.

Concerning the period before she turned eighteen, the ALJ found Jelinek's allegations to not credible because no treating physician had opined that Jelinek was incapable of functioning in either an academic or educational setting, despite Jelinek's assertions to the contrary. Similarly, the ALJ also noted that Jelinek had worked summer jobs and successfully took GED classes despite her alleged disabilities. See Tr. 32. Contrary to Jelinek's assertions, this Court considers this discussion by the ALJ to be sufficiently articulated for this Court to trace the ALJ's reasoning.

For the period after Jelinek turned eighteen, the ALJ cited to medical evidence that Jelinek's physical conditions had improved and that her mental conditions were controlled when she took her medication. The ALJ also discussed Jelinek's daily activities and concluded that

15

the description of her activities reflected an individual with a more active and varied lifestyle than that alleged by Jelinek. The ALJ concluded that Jelinek's claimed physical limitations and functional capability is inconsistent with her testified limitations. This discussion by the ALJ is also sufficiently articulated for this Court to understand the reasons for the ALJ's credibility finding.

    d. <u>Substantial evidence supports the ALJ's finding that Jelinek could perform a significant number of jobs in the national economy</u>.

Finally, Jelinek contends that the ALJ relied on incomplete hypothetical questions to the vocational expert, in determining that she retained her ability to do other work in the community. Jelinek argues that the ALJ's hypothetical question was incomplete because it did not include all of the limitations caused by her mental and physical disabilities.

Hypothetical questions posed to vocational experts ordinarily must include all limitations supported by medical evidence in the record. <u>Steele v. Barnhart</u>, 290 F.3d 936, 942 (7th Cir. 2002). In the instant case, the ALJ examined Jelinek's mental limitations and factored them into the RFC conclusion. <u>See</u> Tr. 33-35. After determining Jelinek's RFC, the ALJ asked a vocational expert numerous hypotheticals to determine whether jobs exist in the national economy that Jelinek could perform. The ALJ first asked the vocational expert to consider a hypothetical individual who was the same age as Jelinek, had the same education, work background and was limited to performing light, unskilled work. <u>See</u> Tr. 541. The second hypothetical question asked the vocational expert to consider an individual with Jelinek's age, education, and work background but was limited to sedentary, unskilled work.

The hypothetical questions posed to the VE by were not incomplete. The questions were based upon and consistent with the ALJ's RFC determination, that Jelinek could perform light

16

and sedentary unskilled work activity. The ALJ's RFC was determined from Jelinek's medical records and the other evidence in the record and was not challenged by Jelinek as insufficiently supported. However, even if Jelinek had made a challenge to the RFC, this Court would have denied it. Indeed, this Court notes that the ALJ spent three pages discussing numerous pieces of record evidence prior to making his RFC finding. As such, this Court considers the ALJ's RFC finding to be substantially supported by the evidence in the record.

Thereafter, the ALJ concluded that a significant number of jobs existed in the national economy that Jelinek could perform. This finding was based on the responsive testimony of the vocational expert, who, after considering the hypothetical posed, identified over 10,000 positions in the regional economy (cumulative) that could be performed by an individual of Jelinek's age, educational background, work experience and RFC. As a result, this Court finds that substantial evidence supports the ALJ's hypotheticals, the ALJ's reliance on the VE's testimony, and the ALJ's finding that Jelinek could perform a significant number of jobs in the national economy.

### III. CONCLUSION

For the reasons stated, this Court concludes that the ALJ's findings are supported by substantial evidence and sufficiently articulated. As a result, this Court **DENIES** Jelinek's for remand. [Doc. No. 16]. Accordingly, this Court **AFFIRMS** the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Clerk is **INSTRUCTED** to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this August 2, 2010

 S/Christopher A. Nuechterlein   
Christopher A. Nuechterlein  
United States Magistrate Judge